BURKS, J.,
delivered the opinion of the court.
If a trustee in pais, with power to make sale of real estate for the payment of debts, attempts to make such sale while there is a cloud resting on the title to the property, or there is any. doubt or uncertainty as to the debts secured or the amounts thereof, or a dispute or conflict among the creditors as to their respective claims, a court of equity, on a bill filed by the debtor, secured creditor, subsequent encumbrancer, or other person having an interest, will restrain the trustee until these impediments to a fair sale have by its aid been removed as far as it is practicable to do so. This *rule has been affirmed in numerous cases decided by this court. See Rossett v. Fisher, 11 Gratt. 492, 499, and cases there cited; also. Lane v. Tidball, Va. Rep. (Gilmer) 130.
And so, if aid of-the court is invoked in the first instance to enforce encumbrances on lands, a decree for sale without first ascertaining, settling and determining what encumbrances are chargeable on the property, the amounts thereof respectively, and the order in which they are so chargeable, would be premature and erroneous. Such has been the uniform course of decision by this court, commencing at an early period. Many of the adjudged cases are referred to in the opinion in Horton & als. v. Bond, 28 Gratt. 815, 822. See also Simmons v. Lyles & als., 27 Gratt. 922; Kendrick & als. v. Whitney & als., 28 Gratt. 646, 655.
The principle on which the decisions in both classes of the cases are founded, is, that a sale without first removing a cloud from the title and adjusting and settling rights in dispute, and without previously ascertaining and determining ' the liens and encumbrances, the amounts, and priorities, tends to a sacrifice of the property — as to creditors, by discouraging them from bidding, when they probably would have bid, for the protection of their own interests, if the rights of all parties had been previously ascertained and fixed with reasonable certainty. Cole's adm’r v. McRae, 6 Rand. 644.
In the case before us. the bill was filed by a creditor to enforce the lien of his judgment against lands aliened after the recovery and docketing of the judgment, and, by the amended and supplemental bill, the judgment debtors, the alienees and such creditors as were secured by deeds of trust, were made parties defendants. The bill, if in form not a creditor’s bill in a strict sense, would seem to be so in substance, and, at all events, *became such under the order which was entered directing accounts of the lands aliened and of all liens and encumbrances thereon. Simmons v. Lyles & als., supra.
The lands consisted of numerous tracts or parcels conveyed to various persons at divers times, .and the encumbrances were by sundry judgments rendered, and several deeds of trust executed at different periods. The commissioner in his report sets out the lands, the 'names of the alienees and dates of the deeds of conveyance, and also the several judgments, dates and amounts, and then remarks, that “there are many other debts mentioned in the several deeds of trust filed with the complainant’s bill, but they the several debts have not been set up with their proof before your commissioner. See the 3 trust deeds filed.” He then makes a summary or recapitulation of the liens and their order, and, after stating the several judgments, says, that “the last six judgments, except that of.W. A. Lindsay, are secured by trust deed May 3d, 1878, S. to L. (Shultz to. Linkenhoker). which see.”
Then follows what he calls the “8th lien” described as “the debts secured by deed of trust from Shultz to Linkenhoker, dated 3rd May, 1878, with the various amounts aggregating $20,292.95.” From this sum he deducts $4,980, showing a remainder of $15,-312.95. It is impossible to ascertain with certainty from any thing on the face of the report on what account this deduction was made, but -it is supposed that it was for the amount of the judgments included in the deed of trust, though calculation would seem to'show a material variance between the sum of the judgments and'the amount deducted. This aggregate of the debts secured by the deed of trust is evidently made up of the principal sums mentioned in the deed, without the addition of interest. Now, looking to the deed to ascertain what debts are *537 secured, we find great uncertainty. *They are numerous and variously evidenced by judgments, bonds, notes and open accounts. The deed professes to state the amounts “approximately” only. In the enumeration, the debts are generally described as “about” the sum stated, and in most instances no dates are given, so as to show when the debts were contracted or when they are payable. It was just this kind of uncertainty, that, in the opinion o’f this court, in Wilkins v. Gordon & wife, 11 Leigh 547, rendered it improper in a trustee to make sale; and it was one of the objects of the order of reference in the present case to remove this uncertainty. The commissioner should have enquired into each one of these debts and ascertained and reported definitely whether it was owing, and if so, the amount of it. principal and interest. In this way only could he have furnished the necessary information to the court and the parties. As to these debts (the judgments excepted) the report gave no material aid in their ascertainment, and as to them the en-quiry as made by the commissioner, had as well not been ordered. The report is in other respects defective and imperfect. It is not necessary to go further into particulars. The decree confirming it carries on its face evidence that it ought not to have been confirmed: for. notwithstanding the confirmation, it provides in terms, “that the defendants or such of them as may desire it, have leave to have said report recommitted to the said master, in order that may after having given notice as specified in the former decree, take evidence as to any payment, release or satisfaction of any of the judgments in the report mentioned, or of any of the debts in the several deeds of trust set forth, and ascertain, state and report any other matters which the parties, or their counsel, or any of them, may require, or as may be deemed pertinent to the master.” Instead of confirming the ’’’report and ordering a sale, the circuit court should have sustained the exceptions of the appellant and recommitted the report.
But if a decree confirming the report and ordering a sale had been proper, still the decree entered is erroneous.
It appears by the answer of Shultz, that the judgment of Hansbrough (complainant below) was for a debt originally owing by Shultz to Ann S. Gorgas. with whom Hans-brough, after the debt was contracted, intermarried, and after marriage he took the bond of Shultz for the debt payable to himself, and recovered judgment upon it. It was contracted for the purchase of a tract of land known in the proceedings as the “retreat” property, sold by Mrs. Gorgas to Shultz and conveyed to him by deed on the face of which a lien was retained for the deferred installment of the purchase money, which was the greater part. This deed is exhibited with the answer and shows the retention of the lien. After the recovery of the judgment and before the deeds of trust which have been referred to were given, this land was sold by Shultz to the appellee Harrison Robertson, the latter undertaking to pay the Gorgas debt, principal and interest, in discharge of the lien retained on the land by Mrs. Gorgas. This undertaking of Robertson is recited in the deed conveying the land from Shultz to him. The statements so far of the answer of Shultz are responsive to the bill and especially to the fourth special interrogatory therein propounded to him concerning the real estate aliened, requiring him to disclose “to whom, when and how and for what considerations, he aliened any portions thereof.”
When a bill calls for a material disclosure from the defendant on oath and the defendant in his answer on oath makes such disclosure fully and unequivocally, *the answer to the extent of such disclosure, is as much responsive as when it expressly and positively denies material allegations in the bill, which the defendant is called upon to answer; and in either case, it is an elementary principle in equity jurisprudence, that the answer, as far as it is responsive, is evidence for the respondent, and its statements so far must be taken againii the complainant as true unless overcome by the requisite proof. Fant v. Miller & Mayhew, 17 Gratt. 187; Shurtz & als. v. Johnson & als., 28 Gratt. 657, 663.
There is no evidence controverting these statements of the answer. On the contrary, they are to a certain extent corroborated by the deeds already referred to, and a copy of the deed to Robertson was exhibited by the complainant and filed with his bill. Mr. Robertson in his answer, does not in express terms refer to the contract with Shultz as set out in the answer of the latter, but he impliedly recognizes it by referring for his title to the deed from Shultz, which on its face sets out Robertson's engagement.
From this proof it appears, thatthe appellee Hansbrough has two securities for his debt; first, a specific lien by virtue of the deed from Gorgas to Shultz on the land subsequently conveyed by the latter to Robertson, and second, a general lien by judgment on that land, and also on all the other lands aliened by Shultz, while the only security held by the appellant Jolliffe and the creditors at large embraced with him in the deed of trust to Linkenhoker of May 3rd, 1878, is by virtue of the last-named deed in which the land previously conveyed to,Robertsonis not included.
It is a rule in equity, said to be well established in this country, that where one has a lien upon two funds and another a posterior lien upon only one of them, the former will be compelled first to exhaust the subject of his exclusive lien, and will be permitted to *resort to the other only for the deficiency; but this rule is generally applied, it seems, only in cases where to compel a resort to the singly charged fund would not be productive of any additional risk, injury or delay to the double creditor. Adams’ Equity (6th Amer. _Ed.) 272 (side page), note 1, and authorities there cited.
This equity, however, has no existence, as against a bona fide purchaser, in favor of a *538 creditor who has no lien on the land sold, unless such equity springs out of some special provision of the contract between the purchaser and the vendor. In the absence of stipulations to the contrary, the purchaser of a clear title has the right to require his vendor to, remove all encumbrances from the land, and this equity is prior and paramount to the equity of any creditor acquiring a subsequent lien on .other lands of the vendor to have the securities marshalled for his relief against the purchaser.
But where the purchaser buys subject to an existing encumbrance, or undertakes to pay it off in satisfaction of the purchase money due his vendor, the case is very different. He thus becomes the principal debtor and as between himself and the vendor at least, he is primarily bound to discharge the encumbrance, and the vendor having a right as against him to require the obligation to'be performed, the subsequent encumbrancer is entitled to stand in the vendor’s shoes and have his equities administered for his relief. Aldrich v. Cooper, 2 Lead. Cas. Eq., Part 1. (4th Ed.), 270, 271, 273, et seq. and cases there cited.
And such is the case before us. Robertson, under his contract with Schultz, is bound to pay the Gorgas debt, now held by Hans-brough. In his relation to.Shultz-, he is the principal debtor and Shultz surety only, and the latter and the creditors who succeed to *his equities, have the right to require the land held by Robertson to be subjected to the satisfaction of tjie lien which rests upon it in exoneration of the lands subsequently aliened by Shultz and encumbered by the deeds of trust. Buchanan v. Clark, 10 Gratt. 164. See also the reasoning of Judge Tucker in Douglass v. Fagg, 8 Leigh 588, 602, 603; notes to Dering v. Earl of Winchelsea, 1 Lead. Cas. Eq.. Part I. (4th Amer. Ed.), 147. Hansbrough, the judgment creditor, cannot complain of this. It does not prejudice his rights. It imposes no additional hazard, inconvenience, or delay upon him. He filed his bill against all the alienees and asked that all the lands aliened, as far as necessary, should be subjected to the satisfaction of his judgment. The alienees are all before the court, and it is the plainest equity imaginable, that the land primarily bound should be first subjected. If the lands conveyed by the trust deed of May 3,1878. were first sold, after satisfaction of the complainant's judgment, the trust deed creditors would be entitled to be substituted for relief against the land held by Robertson, or such of the proceeds as remained after satisfaction of Hansbrough’s judgment. There is every reason therefore why the land sold to Robertson shall be subiected in the first instance.
The statute (Code of 1873, ch. 182, § 10) declaring the order in which aliened lands shall be liable, must be construed so as to harmonize with the equities which have been considered. It could never have been intended by the legislature to subvert equities at once so potent and so obvious.
There is nothing in the record showing that the lien reserved by the deed of Mrs. Gorgas has ever been released. The mere taking of the bond by Hansbrough for the same debt would not of itself operate a release, and the lien is subsequently recognized in the deed *from Shultz to Robertson as existing. See opinion of Judge Staples in Coles v. Withers & als., supra 186, and authorities there cited. But even if the lien under the deed has been released, the result would not be changed. There is still the judgment lien and the agreement of Robertson to pay the debt.
The decree of the circuit court must be reversed, and the cause remanded with directions to recommit the commissioner’s report, and. in any sale of the lands which may hereafter be ordered, the land conveyed to Robertson must be subjected before the lands subsequently aliened.
The decree was as follows:
This day came again the parties by their counsel, and the court having maturely considered the transcript of the record of the decree aforesaid and the arguments of counsel, is of opinion, for reasons stated in writing and filed with the record, that the land conveyed by the appellant, Joseph H. Shultz, to the appellee, Harrison Robertson, by deed bearing date on the 22d day of May, 1877, a copy of which deed is made an exhibit in this cause, is first liable to the satisfaction of the judgment of the appellee, Hiram Hans-brough, and should be subjected thereto before the other lands aliened by said Shultz should be resorted to for that purpose.
But tlie court is further of opinion, that the debts and the amounts thereof chargeable of said lands, and especially the debts secured by the deed of trust to Lewis Linkénhoker, trustee, dated May 3d, 1878, are not ascertained and determined by the report of Commissioner Simmons and the decree aforesaid with such certainty as to authorize a sale of said lands, and the said decree was therefore premature, and is erroneous *in ordering such sale before the said debts and amounts thereof had been so ascertained and determined as aforesaid.
Therefore, it is decreed and ordered that the said decree be reversed and annulled, and that the appellants recover against the appellee, Hiram Hansbrough, their costs by them expended in the prosecution of the appeal aforesaid here; and this 'court now proceeding to render such decree as the said circuit court ought to have rendered, "it is further decreed and ordered that the first and third exceptions of William Jolliffe to the report of Commissioner Simmons be sustained, and that said report be recommitted to one of the commissioners of the said circuit court with instructions, after giving notice to the parties, to make further enquiries into the matters embraced in the other exceptions.of said Jolliffe to said report, (this court not determining any questions raised by the last-named exceptions), and also into the several debts aforesaid, and ascertain the dates and amounts'thereof, principal and interest, whether owing and to whom, and restate the accounts ordered *539 by the decree in this cause rendered on the 17th day of February, 1879, and make report to the said circuit court. And it is further decreed and ordered that in hereafter ordering any sale of the said lands that may be necessary, the said circuit court shall order the land aforesaid conveyed to the said Harrison Robertson to be sold to satisfy the judgment of the appellee Hiram Hansbrough. in the bill and proceedings mentioned, first and before sale shall be made for that purpose of the lands subsequently aliened by the said Shultz.
Decree reversed.